(C. D. 1770)

Walco Bead Co., Inc.
H. W. Robinson Air Frt. Corp. } *v.* United States

United States Customs Court, First Division

(Decided March 22, 1956)

*Strauss & Hedges* (*Edward N. Glad* of counsel) for the plaintiffs.
*Warren E. Burger*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.
*Isadore Paisner* as *amicus curiae.*

Before Oliver, Mollison, and Wilson, Judges

Oliver, Chief Judge: This case relates to merchandise described on the invoice as "Rhinestone Rondelles," which were assessed with

duty at the rate of 40 per centum ad valorem under the provision in paragraph 1527 (d), as modified by T. D. 52739, for "Stampings * * * of metal, whether or not set with glass or paste, finished or partly finished, separate or in strips or sheets, suitable for use in the manufacture of any articles provided for in paragraph 1527 (a), (b), or (c), Tariff Act of 1930 * * *." Paragraph 1527 (a), (b), or (c) of the Tariff Act of 1930 provides for the following articles:

(a) Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof): * * *.

(b) Rope, curb, cable, and fancy patterns of chain * * *.

(c) Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished: * * *.

The collector's action with respect to the merchandise in question resulted in a change in practice and was taken pursuant to a directive issued by the Commissioner of Customs (88 Treas. Dec. 56, T. D. 53219 (4)), the pertinent part of which reads as follows:

(4) *Rondelles*, each consisting of two small circular metal disks or stampings which when placed together hold rhinestones or other imitation precious stones, are properly classifiable under paragraph 1527 (d), Tariff Act of 1930, as stampings of metal, whether or not set with glass or paste, finished or partly finished, suitable for use in the manufacture of any of the articles provided for in subdivision (a), (b), or (c) of that same paragraph, rather than under paragraph 1503, Tariff Act of 1930, as beads. * * *

Plaintiffs claim that the merchandise is properly dutiable at the rate of 17½ per centum ad valorem under the provision in paragraph 1503 of the Tariff Act of 1930, as modified by T. D. 51802, supplemented by T. D. 51898, for "Beads, including bugles, not specially provided for."

The issue has been very thoroughly presented by the respective parties. Eleven witnesses testified. Six appeared on behalf of plaintiffs. Five were called by defendant. In addition, several exhibits were offered and received. The evidence can be summarized as follows.

Plaintiffs' first witness was the sales manager of the Walco Bead Co., Inc., the importer of the merchandise under consideration. He identified samples of the articles in question (plaintiffs' collective exhibit 1) that he has bought and sold, and consistently referred to, for "over 20 years," as rhinestone rondelles, and which have never been referred to as beads. Jewelry manufacturers, embroiderers, and trimming stores, to whom the witness sold rhinestone rondelles such as the articles under consideration, use them in

the manufacture of necklaces, earrings, bracelets, and for use as trim on dresses. The chief use of the merchandise is for costume jewelry, principally for bracelets. When they are used in bracelets, these rhinestone rondelles are never used by themselves, but always as separators between beads (defendant's illustrative exhibit F). The witness stated that his understanding of the term "rondelle" is in accordance with the definition, read by counsel as taken from "Webster's New International Dictionary, Second Edition, in the 1936 print, and also in the 1950 print" (R. 11), as follows:

A gem or bead cut in a thin disk pierced in the center, and, commonly, strung between larger stones or beads in a necklace.

On cross-examination, the witness defined a "rondelle" as a flat or semiflat disk, "slightly concave or slightly convex," that has been perforated, suitable for stringing or threading, and made of either metal or wood. Referring to the practice of invoicing merchandise, the witness stated that the merchandise in question has always been invoiced as rhinestone rondelles, that it has never been ordered or invoiced as beads, and that the word "bead" has been used in the invoice description of some beads, such as chalk-colored beads, seed beads, and silver-lined beads. Along the same line, the witness further testified that "in selling different types of beads we usually put down the more or less trade article classification. As an example, I would say this: If we were to sell bugle beads we would not put on the invoice 'bugle beads'; we would just mark it 'bugles.'" (R. 36–37.) "And the same would hold good for a rhinestone rondelle, the invoice would just read 'Rhinestone rondelle,' but the rhinestone rondelle is also a form of a bead." (R. 38.)

Five more witnesses were called by plaintiffs. All of them have been employed for several years by importers of merchandise that includes rhinestone rondelles like those under consideration. Although their testimony, under the terms of an oral stipulation entered into between counsel for the respective parties, is entirely cumulative of the testimony of the first witness, as hereinabove outlined, specific mention will be made of certain corroborative testimony, concerning use, indicative of the type of merchandise involved herein. The witness, Detkin, general manager and buyer of the Royal Bead Novelty Co., Inc., and importer of costume jewelry and beads, testified that his company manipulates rhinestone rondelles for use in necklaces and that, in such use, the rhinestone rondelles are strung "between beads." The witness, Edelman, manager and import buyer of the Clover Bead & Jewelry Co., importer and manufacturer of costume jewelry, stated that his company has been "using these rondelles for many years, as infills for necklaces, and also in between, for earrings."

Defendant's first witness, Greenberg, was the executive vice president of the Brier Manufacturing Co., manufacturer of all types of jewelry and other related items of adornment, including "kiddie" jewelry, costume jewelry, men's jewelry, and religious jewelry. The company also imports all types of beads, imitation stones, and "various brass articles suitable for the manufacturing of jewelry." The witness stated that he is "in general charge of designing, production, importing of materials, as well as domestic purchasing and sales." His knowledge of rhinestone rondelles goes back, prior to 1930, when he purchased such merchandise in Czechoslovakia. Over the "last several years," he has been manufacturing rhinestone rondelles in the plant of his company in Providence, R. I. He identified several rhinestone rondelles of different sizes and shapes (defendant's illustrative exhibit G), including items that are identical with the articles in question, which have been consistently known as rhinestone rondelles since 1926, when the witness first handled such merchandise. Based on personal observation of the manufacturing processes in Czechoslovakia and on actual experience manufacturing rhinestone rondelles in this country, the witness testified that the articles in question consist of two brass findings, or brass disks. He defined a "finding" as "a small article of metal, suitable for the further fabrication of jewelry. It is a partly fabricated piece of material." The two findings, or metal disks, used in making these rhinestone rondelles are made on a stamping press and were identified as the female member (defendant's illustrative exhibit A) and the male member (defendant's illustrative exhibit B). They are produced by combination tools in multiple operations. The stamping press strikes the contour, or the shape, of the design. A hole is punched, and the ends are trimmed to produce fluted edges that fit the contour of the glass rhinestones. All three operations are performed simultaneously. The disks, or stampings, are so constructed that the slight protrusion in the center of one fits into the hole punched in the other. After the required number of glass rhinestones have been laid in the basic male member (illustrative exhibit B, *supra*), the other (illustrative exhibit A, *supra*) is placed on top, and, by pressure, known as a swedging operation, the glass rhinestones are permanently set by rolling the projected part of the basic member around the hole in the other. The finished article, a rhinestone rondelle, is a combination of stampings set with glass. Rhinestone rondelles are used in an "infinite variety" of ways. "They are used in necklaces, bracelets, dress buttons, hat pins, shoe ornaments," and lipstick containers. The primary purpose of rhinestone rondelles is for ornamentation.

The witness' testimony on cross-examination emphasized his distinction between beads and rhinestone rondelles. In this connection, he stated he never heard of an article made of stampings, set with

rhinestones, called a bead. Asked about the definition of "rondelle" that plaintiffs' counsel had read to the witnesses for plaintiffs, he stated that he agreed with the definition, but it did not relate to the rhinestone rondelles, collective exhibit 1, *supra*, involved herein, which "is a combination of stampings set with glass stones" (R. 101). Questioned by the court with reference to the collection of rhinestone rondelles displayed on the velvet card (illustrative exhibit G, *supra*), the witness testified that "in our industry, in the jewelry industry, all those articles on that velvet card that you have are referred to as rondelles. Now, they may be referred to as a triangular rondelle, and perhaps the nomenclature is contrary to the dictionary definition, but in the jewelry industry everything you see on that card is commonly referred to as rhinestone rondelle, whether it is a beveled rondelle or a round rondelle or a triangular rondelle, they are bought and sold as those in the commercial world."

By Judge Mollison:

Q. Even though the object is square?—A. Even though the object is square. That is a terminology in our industry, and while it would appear as words, as you pick over a word that is in conflict with the very essence of the word, rondelle itself, yet through the years we in the jewelry industry referred to all of those particular sizes and shapes as rhinestone rondelles.

Q. How many years has that been true?—A. Well, I will go back to my own experience, to 1928. But prior to that time would be hearsay as to what I heard, but for the past 27 years I believe it is true, as far as I am concerned, and those of us in the industry are familiar with it, sir.

The concluding statement of the witness' testimony is that rhinestone rondelles are composed of two metal stampings set with glass.

Defendant's second witness was the secretary and treasurer of E. H. Ashley & Co., Inc., of Providence, R. I., importer of stones, beads, and other materials used in jewelry, including rhinestone rondelles. He became familiar with the merchandise in question (collective exhibit 1, *supra*), as well as the articles displayed on the velvet card (illustrative exhibit G, *supra*), by having seen them on the European market, and "later on seen them as produced in this country," and ordered and sold them, throughout the United States. The witness testified that, from 1928 to the present time, the articles under consideration (collective exhibit 1, *supra*) have been bought and sold, and referred to in the trade, as rhinestone rondelles, which he described as follows: "Rhinestone rondelles are two metal parts—an assembly of two metal parts wedged together and holding glass stones." The two metal parts are stampings. Rhinestone rondelles are not beads; they have never been bought or sold, or referred to, as beads. The witness' reasons for saying that rhinestone rondelles are not beads were stated as follows (R. 116):

At least, of course, there are borderline cases, but at least, the majority of these prerequisites should be fulfilled, such as a bead. The ideal bead would be

a round object, round or oval object, and of a homogeneous material, primarily a semi-precious stone or a glass or a pearl, drilled somewhere along its longest axis, and capable of being strung in a series, to make a necklace by itself. The rhinestone rondelle is not a homogeneous material; it is not, certainly not perforated along its longest axis. It has, as a matter of fact, another factor, is that a bead in order to hang best and straight, should hug the thread on which it is strung as closely as possible. That means the hole should be as close to the thickness of the thread as possible. If it is wider it wobbles; it does not hang straight. The rhinestone rondelle certainly has a much larger hole than would be functional from that point of view.

Rhinestone rondelles are never used alone in making a necklace.

On cross-examination, plaintiffs' counsel repeated the same definition of "rondelle," hereinabove set forth, and which was read to the previous witnesses. This witness characterized the definition as "quite satisfactory for a rondelle," but "It does not cover a rhinestone rondelle" (R. 119). There is no common use for rhinestone rondelles. They are used "all over the jewelry field," in innumerable forms of jewelry designs, principally in earrings, necklaces, bracelets, hat pins, brooches, buttons, and also in lipstick cases and bag frames.

Alex Danenberg, defendant's third witness, stated that he is a partner in the Novel Products Co., whose manufacturing operations, since 1929, included rhinestone rondelles. The witness testified that the articles in question (collective exhibit 1, *supra*) are rhinestone rondelles, that they have been bought and sold as such, and that they have never been referred to as beads. He stated that he agreed with the testimony of defendant's witness, Greenberg, as it explains the manufacture of rhinestone rondelles. He then described a rhinestone rondelle as a series of rhinestones, made of glass, set between two flanged caps, that are stampings, and swedged, or held, together in the center. The hole in the rhinestone rondelle serves as a convenience in the manufacturing process, for the tools to get a recess, "so that you can swedge both parts together. It doesn't necessarily mean that you have to put the hole in the center, that can be put on the side." (R. 128.) The witness' principal uses for rhinestone rondelles are in the making of necklace clasps, cuff links, bracelet parts, necklace parts, and trim for lipstick holders. Rhinestone rondelles are never used alone to make a necklace. The same definition that plaintiffs' counsel read to the other witnesses was repeated to this witness. Asked whether he agreed with that definition of "rondelle," the witness replied that "I don't tie it up with this rondelle," referring specifically to the rhinestone rondelles in question. (R. 133.)

Irving Roth, general manager of Roth & Steiner, who is a domestic manufacturer of rhinestone novelties, costume jewelry, and accessories, including rhinestone rondelles, testified that he has manufactured articles like those under consideration (collective exhibit 1, *supra*), that they have always been referred to as rhinestone rondelles,

and that they have never been bought or sold as beads. Referring to the collection of rhinestone rondelles displayed on the velvet card (illustrative exhibit G, *supra*), the witness stated that those items are identified according to their shapes, such as, bevel rondelle, triangle rondelle, oval rondelle, square rondelle. He described the manufacture of rhinestone rondelles as follows:

> We are making, first, the stampings into the shape what we want to make the rhinestone rondelle in. Then we set rhinestones in it, and we have holes and male and female parts, which are swedged together, and we make the rhinestone rondelle.

The witness referred to more recent uses of rhinestone rondelles. In this connection, he mentioned their use in ladies' pipes (defendant's illustrative exhibit N), in cigarette holders for the purse (defendant's illustrative exhibit O), in ladies' cigarette holders (defendant's illustrative exhibit P), in pencils (defendant's illustrative exhibit R), in ladies' eyeglass holders (defendant's collective illustrative exhibit T), in tassels used by dress manufacturers as zippers (defendant's illustrative exhibit V), and in a metal container for a toothbrush (defendant's illustrative exhibit X). The witness also stated that he sold loose rhinestone rondelles. In such condition, the articles were sold to manufacturers of dresses, shoes, hosiery, millinery, pocketbooks, and many other articles.

On cross-examination, the witness testified that he manufactures one type of bead, called a link bead, that is sold to the "Rosary trade." His comment with reference to the definition of "rondelle," which plaintiffs' counsel referred to all of the witnesses, as hereinabove set forth, was that he "might" associate the definition with a glass rondelle, but not with a rhinestone rondelle. He distinguished between the glass rondelle and the rhinestone rondelle by describing the glass rondelle as a flat item, made in one piece and of one substance, and stating that the rhinestone rondelle is a manufactured article, composed of more than one material.

Defendant's fifth, and last, witness, Kalman Singer, stated that he is engaged in the manufacture of buttons and rhinestone rondelles. It was agreed between counsel that the witness' testimony would be substantially the same as that offered by defendant's witness, Greenberg, hereinabove outlined.

On the basis of the foregoing review of the record, we find that there is a specific class of merchandise known as rhinestone rondelles, which are never referred to as beads; that the merchandise in question (collective exhibit 1, *supra*) is rhinestone rondelles; that these articles, since prior to the enactment of the Tariff Act of 1930, have always been bought and sold as rhinestone rondelles; that they have never been referred to in the trade as beads; that the rhinestone rondelles in question consist of two metal stampings set with glass; and that they

are suitable for, if not chiefly used in, the manufacture of articles within the classes of merchandise provided for in paragraph 1527 (a), (b), and (c), *supra*. The record also shows that these rhinestone rondelles, when used in the form of a necklace, are always used as separators between beads and never by themselves.

Counsel for plaintiffs, in their brief, contend that a "rondelle" is a form of bead, and argue that "the *eo nomine* designation for beads in Par. 1503 as modified by T. D. 51898 is without words of limitation" and, therefore, "that term includes all forms of beads that fall within the common meaning thereof, of which Plaintiff's Illustrative Exhibit 1 is one." To support the contention, counsel have cited several cases, but all of them are distinguishable from the present issue as the following brief review of each shows.

In *Vandegrift & Co.* v. *United States*, 15 Ct. Cust. Appls. 165, T. D. 42221, the court construed the term "beads," as it was used in paragraphs 1403 and 1430 of the Tariff Act of 1922, and held that the provisions for beads in the said paragraphs were restricted to articles "as were ornamental or suitable for decorative purposes." The case will not support a general rule, as urged by plaintiffs, that "an article in order to be a bead for tariff purposes, must be ornamental in character."

The case of *United States* v. *American Bead Co.*, 3 Ct. Cust. Appls. 509, T. D. 33166, involved several items, including glass beads. So far as the glass beads were concerned, the only question involved was whether or not the articles were suitable for use in the manufacture of jewelry. After finding that the glass beads were unfit for such purpose, they were held to be classifiable under the *eo nomine* provision for beads. That case offers nothing to support plaintiffs' position in this case.

In *United States* v. *General Transport Co.*, 22 C. C. P. A. (Customs) 446, T. D. 47440, the merchandise consisted of small, perforated, animal-shaped articles, which were held to be classifiable as beads, rather than as jewelry. The conclusion was based on the record in that individual case, evidenced very definitely by the court stating that "it is not our purpose here to define the term 'beads', but rather to point out that the court would not be warranted in refusing to accept the testimony," solely because of the shape of the involved articles. Neither the merchandise nor the issue involved therein was comparable to what is before us in this case.

Although the case of *United States* v. *Judae & Co.*, 13 Ct. Cust. Appls. 164, T. D. 41024, included merchandise that the court described as "crystal roundels or disk-shaped beads," the conclusion therein, holding the articles to be classifiable as beads, has no effect on the disposition of the present case. In that case, it was not disputed that the so-called "crystal roundels" were beads. The im-

porter sought classification for the articles as imitation precious or semiprecious stones, a claim that was denied. The conclusion was based on the evidence adduced therein; it is not to be taken as authority for classification of any general class of merchandise.

The cases of *United States* v. *Bartiromo*, 9 Ct. Cust. Appls. 183, T. D. 38003, and *United States* v. *Lamport Export Co.*, 15 Ct. Cust. Appls. 394, T. D. 42569, are also mentioned in plaintiffs' brief, but tend to support the collector's action herein. Both of those cases held to the effect that the provision for materials, suitable for the manufacture of jewelry, was more specific than the provision for beads of all kinds. The *Bartiromo* case arose under the Tariff Act of 1913, and the *Lamport Export Co.* case arose under Tariff Act of 1922. In both cases, the merchandise under consideration consisted of beads, and in each of them a provision covering articles "suitable for use in the manufacture of jewelry" was held to be more specific. While the statutory language of the competing provisions in the two cases was not identical with that involved herein, the issue therein is sufficiently analogous to that now before us as to make the cases important considerations in our disposition of the present case.

As early as 1905, in the case of *United States* v. *American Gem & Pearl Co.*, 142 Fed. 283, rock-crystal rondelles were excluded from classification as beads. Later, and in the case of *Portenoy Co.* v. *United States*, 59 Treas. Dec. 1519, Abstract 14934, this court, speaking through the late Judge Sullivan, held that rhinestone rondelles are not beads. That decision, as reported in abstract form, and so far as pertinent, reads as follows:

> The samples are small disks of metal with a hole in the center. One is composed of white metal, set around the rim with small rhinestones, and the other is composed entirely of white metal. The testimony showed that they are placed between various beads and strung on threads into necklaces. It was found that these rondelles do not answer the dictionary definition of beads.

The distinction between rondelles and beads was expressed in *United States* v. *Wanamaker*, 14 Ct. Cust. Appls. 285, T. D. 41888, where, in rejecting a claim that certain strung beads were parts of necklaces, our appellate court stated:

> * * * The strings of beads are sometimes cut up and smaller necklaces, bracelets and earrings are made therefrom, always with a different cord of pure silk, *sometimes with rondelles between the beads* and sometimes with the graduated arrangement changed. [Italics supplied.]

As hereinabove set forth, counsel for plaintiffs, throughout the trial of the case, referred to the following definition of "rondelle," appearing in Webster's New International Dictionary, second edition, both the 1936 and 1950 printings, as follows:

> A gem or bead cut in a thin disk pierced in the center, and, commonly, strung between larger stones or beads in a necklace.

The definition just quoted is not an acceptable description of the merchandise in question. The rhinestone rondelles under consideration are not gems or beads "cut in a thin disk." The testimony of defendant's witnesses is impressive in its effect that the quoted definition cannot be associated with the articles in question that are bought and sold and known throughout the trade as rhinestone rondelles. The evidence herein is conclusive in showing that these rhinestone rondelles are basically stampings set with rhinestones made of glass. The articles are not "beads," within the common meaning of the term "bead." The following definitions are set forth in plaintiffs' brief. From Funk & Wagnalls New Standard Dictionary (1941 edition), there is quoted the following:

bead n. 1. A little perforated sphere, ball, cylinder, or the like, usually strung on a thread or attached to a fabric for decoration.

From Webster's New International Dictionary, second edition, 1936 and 1950 printings, plaintiffs' brief quotes the following definition:

bead, n. * * * 2. a. A small perforated ball strung with others, and used for counting prayers, as in a rosary; hence, pl. the (or a) rosary; as, to say the beads, to bless beads. b. A similar ball or polyhedron used on fabrics or as jewelry in strings;—esp. in pl.; as, beads and girdles gay.

The rhinestone rondelles in question are not identifiable within the cited definitions of the word "bead." The articles before us differ from beads in general appearance as well as in the myriad of uses to which rhinestone rondelles are applied. Rhinestone rondelles are not capable of use by themselves in the form of a necklace. Their use in such a manner is always as separators between beads. Furthermore, there is no usual or chief use for rhinestone rondelles. The record herein is positive in establishing that these rhinestone rondelles are suitable for, and are actually used in, the manufacture of items of jewelry, as well as in a wide variety of articles, designed to be worn on apparel or carried on or about or attached to the person, such as those contemplated by paragraph 1527 (c), supra.

Plaintiffs' reference to the matter of invoicing, which does not include the word "bead" in itemizing rhinestone rondelles, has no influence herein. In this connection, plaintiffs attempt to associate rondelles with bugles, the latter being concededly glass beads, but which are not identified on invoices as beads. The practice, as it is followed with bugles, supplies no reason for classifying rhinestone rondelles as beads. "Bugles" are eo nomine provided for in paragraph 1503, as amended, supra. Rhinestone rondelles are not. They are provided for in paragraph 1527 (d), as modified, supra, as "Stampings * * * of metal, * * * set with glass * * * suitable for use in the manufacture of any articles provided for in paragraph 1527 (a), (b), or (c), Tariff Act of 1930 * * *."

The contention, as stated in plaintiffs' brief, that "the *eo nomine* designation for beads in Par. 1503 as modified by T. D. 51898 is without words of limitation" is wholly untenable in the light of the phrase, "not specially provided for," included therein. The presence of that statutory phrase is a positive limitation to the scope of the said modified paragraph, so that the provisions thereof apply only to such beads as are not specifically provided for elsewhere. The preponderance in weight of the evidence herein establishes that rhinestone rondelles are stampings of metal, set with glass, suitable for use in the manufacture of articles provided for in paragraph 1527 (a), (b), or (c) of the Tariff Act of 1930, and, as such, they come squarely within the provision for such merchandise in paragraph 1527 (d), as modified, *supra*. Hence, even if rhinestone rondelles were beads—which we hold they are not—they would not be classifiable under said modified paragraph 1503, because they are provided for in paragraph 1527 (d), as modified, *supra*.

. It is a well-established principle in customs litigation that a plaintiff, protesting the collector's classification, assumes the twofold burden of showing that the classification adopted by the collector was erroneous and that the claimed classification is correct. *United States* v. *Gardel Industries*, 33 C. C. P. A. (Customs) 118, C. A. D. 325; *Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 C. C. P. A. (Customs) 150, C. A. D. 227. On the basis of the present record, plaintiffs herein have failed to sustain their burden.

Careful consideration has been given to all of the cases cited in the several briefs filed by counsel for the respective parties, and *amicus curiae*, but our specific references herein have been only to such cases deemed helpful toward our disposition of the issue.

For the reasons hereinabove set forth, the protest is overruled, and the decision of the collector is affirmed.

Judgment will be rendered accordingly.