(C.D. 2356)

DOLLIFF & CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided August 6, 1962)

*Henry L. Ziegel* for the plaintiff.

*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Daniel I. Auster* and *Mollie Strum*, trial attorneys), for the defendant.

Before OLIVER and WILSON, Judges

WILSON, Judge: In this action, the plaintiff challenges the correctness of the classification of certain merchandise, invoiced as "S/29 medium pulled light grey hosiery clips" and "S/1508M pulled oxford grey hosiery clips." The goods were classified under paragraph 1105(a) of the Tariff Act of 1930, as modified, as shoddy and assessed with duty at the rate of 14 cents per pound. Plaintiff asserts that the merchandise in question does not fall within the meaning of the term "shoddy," as used in the Tariff Act of 1930, under paragraph 1105(a), as modified, and that it is not known in the commerce of the United States as shoddy. As further grounds of protest, the plaintiff claims the imported material may be alternatively classified as follows:

1. As waste, not specially provided for, under paragraph 1555 of the Tariff Act of 1930, as modified, dutiable at 4 per centum ad valorem;

2. As wool rags, properly dutiable under paragraph 1105(a) of the Tariff Act of 1930, as modified, at 9 cents per pound;

3. Under paragraph 1105(a), as modified, as wool waste, dutiable at 9 cents per pound;

4. Under paragraph 1558, as modified, as a nonenumerated manufactured article, dutiable at 10 per centum ad valorem.

The pertinent paragraphs of the tariff act here under consideration are as follows:

Paragraph 1105(a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802:

Wool and hair wastes:

   *       *       *       *       *       *       *

   Shoddy, and wool extract_____14¢ per lb.

Paragraph 1555 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739:

Waste, not specially provided for_____4% ad val.

Paragraph 1105 (a) and (b) of the Tariff Act of 1930, as modified by T.D. 51802, *supra:*

Wool and hair wastes:

   *       *       *       *       *       *       *

   Wool rags_____ 9¢ per lb.

Paragraph 1105 (a) and (b) of the Tariff Act of 1930, as modified by T.D. 52739, *supra:*

Wool and hair wastes :

\*         \*         \*         \*         \*         \*         \*

  Wool wastes not specially provided for_____ 9¢ per lb.

Paragraph 1558 of the Tariff Act of 1930, as modified by T.D. 52739, *supra*, supplemented by T.D. 52827 :

Articles manufactured, in whole or in part, not specially provided for (except the following : coconut shell char ; dog food ; marine glue pitch ; synthetic rubber and synthetic rubber articles ; tall oil or liquid rosin ; textile grasses or fibrous vegetable substances ; and edible preparations for human consumption other than yeast) _____ 10% ad val.

It is conceded that the merchandise involved is a woolen material derived from discarded woven and knitted woolen cloth which, before exportation, was processed through a picking or pulling machine. It is the contention of the Government that the materials were sufficiently torn apart before exportation to be reduced to a fibrous condition and, therefore, said material was properly classified as shoddy. The plaintiff, on the other hand, claims that the merchandise, in its imported condition, would have to be further processed by garnetting or carding before it could be properly classified as shoddy. The only issue, therefore, is whether the merchandise, in its imported condition, had been sufficiently processed to be properly classifiable as shoddy, and, if not, how it should be assessed.

The evidence in the case is rather voluminous, but much of it is repetitious. The plaintiff presented four witnesses and the defendant five. There are before us five exhibits introduced by the plaintiff and three by the defendant. In order to make the oral testimony in the case clearer and more readily understandable, it seems well to refer to the exhibits in the case first.

Plaintiff's exhibits are as follows: Exhibits 1 and 2 are official samples representative of the merchandise before the court, the only difference between these exhibits being the color; illustrative exhibit 3 consists of a blending of materials taken from exhibits 1 and 2, the blending having been accomplished by running the materials through a picker before garnetting (R. 9) ; illustrative exhibit 4 shows the imported material after it has been garnetted; and illustrative exhibit 5 is a piece of knitted woolen material, approximately a foot long and about 1 inch wide, somewhat torn apart at one end. This piece of cloth was taken from plaintiff's exhibit 1.

Defendant's illustrative exhibit A is a large jar filled with certain materials. Counsel for the defendant alleged at the hearing herein that some of the contents of this jar contains merchandise set up as a standard and used by Government officials in prior years as a basis

to classify merchandise such as the importation at bar. In this connection, defendant's witness Miller described the merchandise therein as follows:

There are four separate items in here, two of rags and two of shoddy. There is a light-colored rag, a light-colored shoddy, a black rag and a black shoddy. [R. 107.]

Defendant's exhibit C consists of a small piece of knitted woolen material mostly torn apart, taken out of plaintiff's exhibit 1. Defendant's exhibit D is composed of some fibrous woolen material, evidently intended to show the difference between the products derived from picking or pulling old and new woolen fabrics.

In substance, the witnesses for the plaintiff testified that the materials represented by plaintiff's exhibits 1 and 2 are not shoddy; that, as exported, they had been processed only by running them through a picking or pulling machine; and that before they could be considered shoddy, it would be necessary that they be garnetted or carded, so as to make them ready for spinning (R. 37). Testimony to this effect, however, was weakened by conflicting evidence, as disclosed below.

Plaintiff's witness Alexander Smith is the superintendent of processing, connected with Congress Garnetting, Inc., Boston, Mass. The record discloses that he has been employed in woolen and garnetting mills, processing wool wastes in the preparation of stock for spinning. This witness, when asked to give his understanding of the term "shoddy," testified as follows:

A. Old rags, discarded wastes.

X Q. What kind of waste?—A. Well, old rags such as you throw away.

X Q. Rags made of what?—A. Well, woolen rags and cotton rags and all types of rags.

X Q. And that's shoddy?—A. Yes. [R. 13.]

\* \* \* \* \* \* \*

X Q. Would you say that picked clips is a character of shoddy, of which there are several types?—A. Yes.

X Q. And it's made of worsted clips?—A. Yes. [R. 14.]

Plaintiff's witness Smith further testified to the effect that imported materials, such as plaintiff's exhibits 1 and 2 and illustrative exhibit 3, often contain pieces of material 6 inches long and from 3 to 4 inches wide, which have not been torn apart through the picking or pulling operations. The witness estimated that such untorn material may represent approximately 10 per centum of the total (R. 7). A shoddy picker was described by this witness as being synonymous with a rag-picker and is "a machine for tearing up wool rags, clippings, et cetera, and reducing them to a fibrous condition," consisting "of a pair of strong, fluted feed rolls between which the material is slowly passed to be acted on by a large, rapidly-rotating cylinder studded with sharp, pointed steel teeth or spikes." (R. 15.)

Plaintiff's witness William B. Burke was the importing broker herein. The testimony indicates that he has been engaged in the wool industry or wool trade for some 42 years, having dealt in material, such as here imported, for 8 to 10 years, and that he had sold such merchandise to garnetters like plaintiff's witness Robert M. Bent, Jr., for whom the merchandise in question was imported. The witness described shoddy as "reclaimed fiber, back to its original form" (R. 30). Although plaintiff's witnesses testified that imported woolen materials like plaintiff's exhibits 1 and 2 generally contain about 10 per centum of untorn cloth, the witness Burke, upon examining exhibit 1, was unable to find any substantial amount of untorn cloth and expressed the opinion, after looking at the exhibit, that it contained less than 1 per centum of untorn pieces (R. 32). The witness further testified that plaintiff's exhibit 2 contained less than 1 per centum of untorn cloth. As a matter of fact, he was really unable to find any such material.

The Government's witnesses were apparently well qualified to testify concerning the matters about which they were interrogated, the record disclosing that they all had varied experience in the wool trade, including the production and selling of shoddy. Their testimony will be hereinafter referred to as is deemed pertinent to our present inquiry.

The Government's evidence in brief was to the effect that plaintiff's exhibits 1 and 2, as well as illustrative exhibits 3 and 4, consist of shoddy.

Defendant's witness Gerald B. Rivlin is associated with Saxony Wool Corp., New York, N.Y., in charge of the production and sale of shoddy. He stated that he has been in the wool business since 1943 and that the number of pounds of shoddy that he had sold since that period "would run into millions" (R. 66). When asked for his definition of "shoddy," Mr. Rivlin replied:

Shoddy is any picked or pulled—those are synonymous. "Pulled" is used in England and "picked" is used in the United States. Pulled or picked, woven or knitted fabric. [R. 67.]

The witness further testified that imported bales of picked wool clips, composed of merchandise like plaintiff's exhibits 1 and 2, may contain bits of whole fabric, but not to exceed 3 or possibly 4 per centum "otherwise it wouldn't be acceptable." He stated that he had never known such merchandise to contain as much as 10 per centum whole fabric (R. 69). Defendant's witness agreed that plaintiff's illustrative exhibit 3 had gone through a process additional to that of picking or pulling—"It has been garnetted or carded to some extent * * *. The fibers have been straightened out." (R. 70.) He testified, however, that plaintiff's illustrative exhibit 3 is "shoddy,"

stating, in this connection, that "shoddy is either picked stock or pulled stock or carded stock or garnetted stock * * * the moment the material is pulled apart it becomes shoddy. Now, to spin it may require a further process such as garnetting, carding * * *." (R. 70.) Mr. Rivlin stated that it would be unusual to find in bales of imported material like that contained in plaintiff's exhibits 1 and 2 pieces of woolen material, such as plaintiff's illustrative exhibit 5. Asked why such untorn pieces would not ordinarily be found in picked merchandise like plaintiff's exhibit 1, Mr. Rivlin replied:

Because it looks at least to me, it doesn't seem conceivable that it can go through a picker machine without being pulled to some extent, somewhere else, except along this edge, which I mean—let me put it this way, improbable, anyway, to me. [R. 74.]

As a possible source of plaintiff's illustrative exhibit 5, Mr. Rivlin explained:

Sometimes it's entirely possible that in the baling, if where they do the picking and the baling is too close, they might have put down some stock originally and then it goes into the baling, but it doesn't seem very conceivable that a piece such as this would go through.

Q. Have you ever found pieces of scraps or clips two or three times as large as Exhibit 5 in a bale like Exhibits 1 and 2?—A. You mean larger than this?

Q. Larger than 5.—A. And not torn apart? No.

Q. That's in that condition?—A. No, that wouldn't take place. There would have to be some evidence that it had gone through the picker.

Q. Would you please examine Exhibit 1 and advise whether you see any other bits like plaintiff's Exhibit 5 in that official sample?—A. No. But this is what I had in mind, for instance, when I said that it would take place. In other words, you might have something like this come through. [Indicating defendant's exhibit C.] [R. 74–75.]

Further testifying concerning defendant's exhibit C, the piece or bit of fabric taken out of plaintiff's exhibit 1, Mr. Rivlin stated:

A. That's what is commonly called a bit in picking. In other words, a machine does [not] tear up equally all the pieces here. So you will see some strings, you will see some pieces, and so forth. You will rarely see something that is not affected.

Q. Referring to Exhibit 5?—A. As Exhibit 5 is, because there are teeth on the machine. It's a cylinder that goes at a great rate of speed and tears this apart. So that in each one of these pieces, if you took the pieces that had been a bit it would be a noncommitant of this thing and probably to the extent of a few percent. [R. 77.]

The same witness testified that, in his opinion, plaintiff's exhibits 1 and 2 are in fibrous form (R. 78). He further asserted that even garnetted material contains some untorn threads. Further testifying, the witness stated that plaintiff's exhibits 1 and 2 are not wool rags, but are picked material. The witness was asked whether shoddy is a product ready for spinning, and replied, "Not necessarily" (R. 80). The witness defined a clip as a rag from which the picking process begins

(R. 82). He testified that if a picking machine is properly set before feeding woolen clips into it, pieces, such as plaintiff's illustrative exhibit 5, could not pass untorn through the machine; that a machine which would permit pieces, such as exhibit 5, to pass through should be put out of operation and relagged, i.e., it should have new teeth placed in it (R. 85).

Defendant's other witnesses corroborated the testimony of Mr. Rivlin. They identified plaintiff's exhibits 1 and 2 and plaintiff's illustrative exhibits 3 and 4 as types of shoddy.

The witness Robert Miller testified that he had been employed from 1925 to 1933 by B. D. Kaplan & Co., the largest dealer in wool rags and clips in the country, and that he has operated his own company since then. Mr. Miller defined wool shoddy as follows:

Wool shoddy is either picked or pulled or carded or garnetted pieces of fabric, woven or knitted, new or old, or a combination of new or old—new and old.

Q. You use the terms "picked" and "pulled." Are they synonymous?—A. They are synonymous. And carded and garnetted wool stock is synonymous depending upon which machine the garnetting or carding was done. [R. 101–102.]

This witness expressed the definite opinion that plaintiff's exhibits 1 and 2 are composed of shoddy and that the material contained in these exhibits had been through a picking machine or a picker (R. 103–104). The witness, by a visual observation made through the glass jar (defendant's illustrative exhibit A), testified, as above noted, that "There are four separate items in here, two of rags and two of shoddy. There is a light-colored rag, a light-colored shoddy, a black rag and black shoddy." (R. 107.) He stated that rags are clips before being put through a machine (R. 110). He also expressed the definite opinion that plaintiff's exhibits 1 and 2 are in fibrous form (R. 116).

This witness was asked concerning his understanding of the term "wool waste," to which he replied:

Waste is generally the various types of waste that come from the machines that go through the different processes of wool, the most common of which is card waste which comes off the carding machine. In other words, it's the short fibers that don't go through the machine. [R. 123.]

An examination of plaintiff's exhibit 1 convinces the court that the material contained therein is in a fibrous condition and that it has been rather thoroughly torn apart. In our opinion, the imported merchandise is not wool rags or wool waste, or a waste, as provided for under paragraph 1555; nor is this merchandise a nonenumerated manufactured article. While the plaintiff is correct in arguing that "The term 'shoddy' has a definite meaning in tariff nomenclature which has remained constant," the evidence and the arguments presented by the plaintiff, in our opinion, are not persuasive in showing that the imported material is not shoddy according to that meaning.

At this juncture, we deem it pertinent to consider certain cases cited by counsel for the plaintiff in his brief. These cases, in our opinion, not only do not support plaintiff's contention, but some of them are against the position taken by plaintiff.

The case of *M. H. Garvey Co.* v. *United States*, 47 Treas. Dec. 1069, Abstract 49391, deals with materials entirely different from the merchandise now before the court. In that case, the importation was described as "Carbonized woolen rags," or as "rags composed of part cotton, part wool, with the cotton removed." The court, in that decision, further pointed out "that woolen rags are clippings or shreds of goods at one time worn or used and no longer fit for the use it was intended." The court approved the testimony of a witness in the case that "Woolen waste is a by-product from woolen worsted spinning or knitting mills."

The foregoing case not only does not lend any support to plaintiff's contention, but makes it clear that the merchandise now under consideration is neither woolen rags nor woolen waste.

Plaintiff evidently cites the case of *United States* v. *Castle & Overton, Inc.*, 18 C.C.P.A. (*Customs*) 21, T.D. 43976, for the purpose of directing attention to certain tariff definitions of shoddy. This case, decided in April 1930, upheld the collector's classification of certain merchandise as woolen rags under a stipulation in which it was agreed that one bale of the involved material "consists of old woolen rags which are unsuitable for the purposes for which the cloths were originally made, and in their condition as imported are fit only for manufacture into shoddy, and that the merchandise covered by the remaining bales * * * consists of new woolen rags, the chief use of which is to be remanufactured into shoddy * * *." Although it was not necessary for the decision, the court pointed out that "shoddy" is defined in Funk & Wagnalls Standard Dictionary as follows:

1. Fiber remanufactured of shredded rags of stockings, yarns, flannels, and other soft woolen fabrics; distinguished from *mungo*, which is made from shreds and clippings of milled woolen cloths; also, cotton fabric similarly made. [Italics quoted.]

There is no question in the instant case but that the starting materials, consisting of woolen rags, have been shredded "from shreds and clippings of milled woolen cloths." Nor is there, as hereinbefore pointed out, any doubt that the beginning material from which the imported merchandise was made had been reduced to fiber by a picking or pulling process.

The case of *E. A. Stone & Co.* v. *United States*, 19 C.C.P.A. (Customs) 234, T.D. 45338, adds nothing to the court's decision in the *Castle & Overton, Inc.*, case, *supra*. Evidently, the plaintiff cites the *Stone* case in order to direct attention to the extract from the Summary of Tariff Information, 1921, cited by the court at page 238

therein. This excerpt from the Tariff Commission report, however, in no way adds strength to the plaintiff's contention that the merchandise in the instant case is not shoddy, as appears in the following excerpt from the quotation:

Shoddy is the wool fiber obtained by tearing apart the yarns in soft woolen fabrics, such as old stockings and sweaters. * * *

To contend that the materials now before us are not torn apart is to ignore the facts since, as pointed out several times, the official samples of the merchandise, plaintiff's exhibits 1 and 2, are definitely fibrous and are rather thoroughly torn apart.

In *P. Silverman & Son* v. *United States*, 27 C.C.P.A. (Customs) 324, C.A.D. 107, and *P. Silverman & Son* v. *United States*, 32 C.C.P.A. (Customs) 99, C.A.D. 292, there is nothing to support the plaintiff's argument that the materials under consideration are something other than shoddy. As a matter of fact, a quotation from the Summary of Tariff Information, 1929, set forth in the second *Silverman* case, *supra*, is really opposed to the plaintiff's position. This excerpt reads as follows, on page 105:

Woolen rags, the term used in the tariff act, include wool rags containing either worsted or woolen yarns. Wool rags vary widely in quality and in price. *Old wool rags* known as "knits" *are obtained from discarded clothing, wholly or in part of wool, such as suits, dresses, sweaters, and stockings. New wool rags* known as "clips" *are clippings from the cutting tables of ready-made suit and cloak houses, tailor shops, etc.* Wool rags are usually reduced to the state of shoddy and the reclaimed wool fibers are largely used in woolen manufacture. Rags that are too inferior for such use are utilized in roofing felts. [Italics quoted.]

Surely in the above definition there is no basis for classifying the plaintiff's merchandise as wool rags, since it consists of "reclaimed wool fibers * * * largely used in woolen manufacture."

The official samples of the imported merchandise, plaintiff's exhibits 1 and 2, conform to the definition of "shoddy," as set forth in the 1956 edition of Webster's New International Dictionary, page 2318, which reads as follows:

shoddy, *n.* * * * 1. A kind of reclaimed wool, esp. that obtained by garnetting or pulling apart soft rags from worsteds or from knitted or loosely woven woolens;—distinguished from *mungo* by length of fiber and by the superior quality of fabrics manufactured from it.

and also as defined in the 1920 edition of The New International Encyclopaedia, volume 21, page 37, which states:

SHODDY * * * A generic term referring to reclaimed wool and cotton fibre of any sort. Such fibre may be obtained by passing rags of wool, worsted, or union fabrics, tailors' clippings, and various mill wastes through pickers, so that they are reduced to a fibrous form and can be mixed with new wool and spun into yarn. * * *

In the case of *J. Eisenberg, Inc.* v. *United States*, 46 C.C.P.A. (Customs) 11, C.A.D. 687, at page 13, our appellate court stated:

The question of the common meaning of the term "rags" has been before this court many times. In addition to the *Eisenberg* and *Mattoon* cases mentioned above, this court considered the term in *P. Silverman & Son* v. *United States*, 27 CCPA 324, C.A.D. 107; *P. Silverman & Son* v. *United States*, 32 CCPA 99, C.A.D. 292; and *United States* v. *Maurice Lobsitz*, 35 CCPA 146, C.A.D. 386.

The definitions set forth in the cases above referred to definitely exclude the shredded material now under consideration from the tariff provisions for wool rags or wool wastes. Further, there is no evidence before the court upon which to predicate a finding that the material involved is a nonenumerated manufactured article or a waste material. It is specifically provided for under paragraph 1105(a) of the Tariff Act of 1930, as modified, as shoddy, as classified.

It is, of course, an elementary rule of customs law that there rests upon the plaintiff a twofold burden in presenting his case. First, he must show that the classification adopted by the collector is erroneous and must further show that the claimed classification is correct. See *Walco Bead Co., Inc.*, and *H. W. Robinson Air Frt. Corp.* v. *United States*, 36 Cust. Ct. 162, C.D. 1770; *United States* v. *Gardel Industries*, 33 C.C.P.A. (Customs) 118, C.A.D. 325. In our opinion, the plaintiff has not sustained either of these burdens.

For all of the reasons hereinabove set forth, we hold the involved merchandise properly dutiable under paragraph 1105(a) of the Tariff Act of 1930, as modified by T.D. 51802, *supra*, at the rate of 14 cents per pound under the provisions therein for "shoddy," as classified. Accordingly, the protest herein is overruled. Judgment will issue accordingly.