UNITED STATES *v.* WANAMAKER (No. 2777) [1]

1. EVIDENCE, PRESUMPTION FAVORING COLLECTOR NOT EVIDENTIARY.

Whatever presumption the collector's classification of strung beads as unfinished jewelry under paragraph 1428, Tariff Act of 1922, may have raised that they were *permanently* strung was rebutted by the testimony of a competent credible witness that they were *temporarily* strung.

2. EVIDENCE, SUFFICIENCY.

Testimony by a competent, credible witness as to what was the practice in her firm, and that she presumed it was the same in other firms, raised a presumption that such was the ordinary commercial practice. *Klipstein* v. *United States,* 1 Ct. Cust. Appls. 122.

[1] T. D. 41888.

3. ROCK CRYSTAL BEADS—SEMIPRECIOUS STONES.

Rock crystal beads, graduated, faceted, cut, and strung, needing to be restrung for necklace use and frequently made up, sometimes in combination with roundels, into other articles, are not unfinished jewelry under paragraph 1428, Tariff Act of 1922; but are "semiprecious stones, cut but not set, and suitable for use in the manufacture of jewlery," under paragraph 1429.

## United States Court of Customs Appeals, November 19, 1926

APPEAL from Board of United States General Appraisers, G. A. 9113, T. D. 41470

[Affirmed.]

*Charles D. Lawrence*, Assistant Attorney General (*Kenneth G. Osborn*, special attorney, of counsel), for the United States.

*Allan R. Brown* for appellee.

[Oral argument October 7, 1926, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The importation, rock crystal beads graduated, faceted, cut, and strung, was classified as unfinished jewlery and returned for duty at 80 per centum ad valorem, under paragraph 1428 of the Tariff Act of 1922.

The protest of appellee claimed them to be dutiable at 20 per centum ad valorem, under paragraph 1429, or at 60 per centum ad valorem under the same paragraph, or under paragraphs 1403, 233, or 214. Appellee relies chiefly upon his claim of 20 per centum ad valorem, under paragraph 1429, as "semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry."

Regardless of whether the merchandise might properly fall within either paragraph 1403, 233, or 214, we think paragraph 1429, if applicable, is more specific and definite, and in view of the decision herein reached it is unnecessary to consider their applicability.

The appraiser's report is as follows:

The merchandise in question is described on the invoice as strings of crystal beads, and was on examination found to be necklaces of crystal beads, strung on durable silk cords, valued at more than 20 cents per dozen.

One witness testified for the importer and one for the Government. Myrtle McClery, a buyer for John Wanamaker, appellee, testified that she bought the goods in controversy and that she was in charge as buyer for appellee and also had charge of making necklaces in the same establishment; that she has been handling similar merchandise for 20 years; that she handled crystal necklaces which were ready to wear; that the importation is not ready to wear but must be restrung; that she frequently cuts them up and makes smaller things out of them, such as throat necklaces, bracelets, and earrings; that she

might or might not use them in the lengths in which they were imported; that the cord holding the beads could not be used at all, because is was not good enough and not heavy enough; that she put knots in all new cords used and she presumes that other firms do the same; that the beads are graduated; that they are graduated and strung to keep them from being lost but that sometimes the strings are cut in two when imported, in which instances the large beads would be at one end of the string and the small beads at the other; that in restringing she uses an all-silk string much finer than the one imported; that the imported string is not a silk string; that it would not permit a knot in it; that it is the regulation cord for such importations; that she makes some necklaces of the length of the imported string of beads; that in making up necklaces she makes them of different lengths and occasionally puts rondelles between them; that sometimes she alternates them, one large and one small.

Frank A. McCarthy testified that he was an examiner in the appraiser's office at the port of New York; that the merchandise was a string of graduated beads on durable twisted silk cord; that he applied the burning test to determine if the cord was silk; that under the test, if the cord is silk it burns up like grease and falls off, while if it is cotton it will show a bright fire; that a mixture of silk and cotton "will show both—both a high fire and melt."

The Board of General Appraisers (now United States Customs Court), sustained the protest and held the goods dutiable under paragraph 1429 at 20 per centum ad valorem, as semiprecious stones, etc.

In this court but two questions have been discussed at length: Is the merchandise unfinished jewelry? If the merchandise is unfinished jewelry and at the same time "semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry," which provision is the more specific? Our answer to the first question renders it unnecessary to answer the second.

The testimony that appellee never uses the importation in the condition imported, that it is always restrung and that the cord is a temporary cord and not a permanent one is undisputed. While the appraiser's report does not help the Government much in its position, whatever presumption attaches to it, and which is contrary to the undisputed evidence, is overcome by the testimony, and under the rule laid down in *United States* v. *Morse Bros.*, 13 Ct. Cust. Appls. 553, T. D. 41432, and if it is contended by the Government that the merchandise is permanently strung and used in the condition as imported, it should have produced evidence to that effect.

In the Government's brief we find the following:

The fact that one importer makes a practice of restringing or substituting something perfectly good with something better should not disturb the classification of the collector.

In *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, this court held that the testimony of an unimpeached witness who testified that his firm sold birch tar oil to jobbers in tanning materials and tanners of leather exclusively, that he had never known it to be sold in the markets of the country to anybody else, and that he knew of no other use to which it was susceptible, was sufficient evidence to throw the burden on the Government of showing that it was not used as a dressing for leather or that it was not its only use. This decision was rendered in reference to paragraph 568 of the tariff act of 1897, which provided for oils for "dressing leather, and which are fit only for such use."

In the case at bar the testimony of the importer's buyer was sufficient to place upon the Government the burden of rebutting and overcoming the showing made by the importer.

Agreeable to the finding of the board, therefore, the official exhibit consists of graduated rock crystal beads strung on a partial silk cord, knotted at the ends, without a clasp. The rock crystals are semi-precious stones, and are faceted and cut, the small beads are at the ends and the large beads are in the middle of the string, and in its imported condition the string of beads was not ready to wear and was not permanently strung, and was not worn or used in the condition imported. The strings of beads are sometimes cut up and smaller necklaces, bracelets and earrings are made therefrom, always with a different cord of pure silk, sometimes with rondelles between the beads and sometimes with the graduated arrangement changed.

In *United States* v. *Emrich & Schorsch*, 13 Ct. Cust. Appls. 199, T. D. 41053, the merchandise consisted of strings of pure amber beads which were graduated and strung on strings of necklace length, the strings being of mercerized silk, tied at each end and without a clasp. This court, there, said:

> The evidence in this case shows that the beads are graduated and sufficient in number to constitute a necklace, and we can see no reason why they would not make a desirable necklace, if finished by the addition of a clasp. The witnesses, however, stated positively, without contradiction, that these beads were restrung and reassembled, and that sometimes they added different colored beads and fixed them in various ways to sell to the trade; that they added various colored crystal rondelles; that they never made them into necklaces in the condition in which they were imported by just putting on a clasp. There is nothing in the evidence showing that the beads after being restrung are the same in number and arrangement.
>
> The beads in controversy, according to the testimony and judging from the exhibit, are not dedicated to the making of a certain definite article of jewelry, nor are they a certain definite article of jewelry in an incomplete or unfinished state. Therefore, they were not properly classified by the collector as jewelry, regardless of whether he had intended to classify them as jewelry finished or jewelry unfinished.

It would seem to us that the *Emrich* case, *supra,* is decisive of the issues involved here. The exhibit before us is not dedicated to the making of a certain definite article of jewelry, "nor is it a certain definite article of jewelry in an incompleted or unfinished state." It was not a necklace in its imported condition and to finish it into a necklace would require more than adding to what has already been done. To finish it into a necklace all of the beads, in the order in which they are now strung, might be used, but the present temporary cord would have to be replaced with a different one.

In our opinion, under such a statement of facts, the importation could not properly be called unfinished jewelry. In this view we are supported by the decision of the United States Supreme Court in *United States* v. *Citroen,* 223 U. S. 407, where thirty-seven drilled pearls unset and unstrung, and which were graduated and matched, were held to be "pearls in their natural state, not strung or set, rather than articles commonly known as jewelry, and parts thereof, finished or unfinished, not specially provided for." The pearls were a desirable collection for one necklace and had been strung at different times on a silk cord and had been worn abroad as a string of graduated, matched pearls.

The semiprecious stones under consideration are suitable for use in the making of jewelry, and the proof shows that they are so used. They are cut and not set. The merchandise is aptly described in and properly falls within that part of paragraph 1429, which provides for "semiprecious stones, cut but not set, suitable for use in the manufacture of jewelry, 20 per centum ad valorem," and the judgment of the Board of General Appraisers (now United States Customs Court) is *affirmed.*