(C. D. 1970)

ARMAN IMPORTING CO.
H. W. ROBINSON AIR FRT. CORP. ET AL. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 20, 1958)

*Barnes, Richardson & Colburn; Strauss & Hedges (Edward N. Glad* of counsel); for the plaintiffs.

*George Cochran Doub,* Assistant Attorney General (*Mollie Strum,* trial attorney), for the defendant.

*Isadore Paisner* as *amicus curiae.*

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: The protests enumerated in schedule "A," hereto attached and made a part hereof, all of which were consolidated for the purposes of trial, relate to rhinestone rondelles, that are

identified herein by the invoice items marked "A" with green ink and which were assessed with duty at the rate of 40 per centum ad valorem under the provision in paragraph 1527 (d), as modified by T. D. 52739, for "Stampings * * * of metal, whether or not set with glass or paste, finished or partly finished, separate or in strips or sheets, suitable for use in the manufacture of any articles provided for in paragraph 1527 (a), (b), or (c), Tariff Act of 1930 * * *." Paragraph 1527 (a), (b), and (c) of the Tariff Act of 1930 provides for the following articles:

(a) Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof): * * *

(b) Rope, curb, cable, and fancy patterns of chain * * *.

(c) Articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished: * * *

Plaintiffs claim that the merchandise is properly dutiable at the rate of 17½ per centum ad valorem under the provision in paragraph 1503 of the Tariff Act of 1930, as modified by T. D. 51802, supplemented by T. D. 51898, for "Beads, including bugles, not specially provided for."

Precisely the same issue, involving identical merchandise, was presented in *Walco Bead Co., Inc., et al.* v. *United States*, 36 Cust. Ct. 162, C. D. 1770, the record in which case was incorporated herein on motion by counsel for defendant and without objection from plaintiffs. In that case, we sustained the classification of the collector, in assessing these rhinestone rondelles for duty under the provision in paragraph 1527 (d), as modified, *supra*, for metal stampings, set with glass, suitable for use in the manufacture of articles provided for in paragraph 1527 (a), (b), or (c) of the Tariff Act of 1930, carrying a dutiable rate of 40 per centum ad valorem. No appeal was taken from that decision.

In the incorporated case, six witnesses appeared on behalf of plaintiffs and five were called by defendant. While our decision in the *Walco Bead Co., Inc.*, case, *supra*, analyzed in much detail the testimony adduced therein by both parties, we deem it necessary, in like manner in this case as a basis for our decision herein, to outline at length the testimony offered in the incorporated record, as well as the additional testimony offered by plaintiffs in the present case. We proceed accordingly.

Plaintiffs' first witness in the incorporated record was the sales manager of the Walco Bead Co., Inc., the importer of the merchandise. He identified samples of these rhinestone rondelles (collective exhibit 1 in protest 245333–K) and stated that he has bought and sold, and con-

sistently referred to, such merchandise "for over 20 years" as rhinestone rondelles and that he has never referred to them as beads. Jewelry manufacturers, embroiderers, and trimming stores, to whom the witness sold rhinestone rondelles, such as those under consideration, use them in the manufacture of necklaces, earrings, bracelets, and for use as trim on dresses. The chief use of the merchandise is for costume jewelry, principally for bracelets. When they are used in bracelets, these rhinestone rondelles are never used by themselves, but always as separators between beads (defendant's illustrative exhibit F in protest 245333–K). The witness stated that his understanding of the term "rondelle" was in accordance with the definition, read by counsel as taken from "Webster's New International Dictionary, Second Edition, in the 1936 print, and also in the 1950 print." (R. 11 in protest 245333–K), as follows:

A gem or bead cut in a thin disk pierced in the center, and, commonly, strung between larger stones or beads in a necklace.

On cross-examination, the witness defined a "rondelle" as a flat or semiflat disk, "slightly concave or slightly convex," that has been perforated, suitable for stringing or threading, and made of either metal or wood. Referring to the practice of invoicing merchandise, the witness stated that the merchandise in question has always been invoiced as rhinestone rondelles, that it has never been ordered or invoiced as beads, and that the word "bead" has been used in the invoice description of some beads, such as chalk-colored beads, seed beads, and silver-lined beads. Along the same line, the witness further testified that "in selling different types of beads we usually put down the more or less trade article classification. As an example, I would say this: If we were to sell bugle beads we would not put on the invoice 'bugle beads'; we would just mark it 'bugles'." (R. 36–37, protest 245333–K.) "And the same would hold good for a rhinestone rondelle, the invoice would just read 'Rhinestone rondelle,' but the rhinestone rondelle is also a form of a bead." (R. 38, protest 245333–K.)

The five additional witnesses, called by plaintiffs in the incorporated record, were employees of importers of merchandise that included rhinestone rondelles like those under consideration. Their testimony, under a stipulation entered into between counsel for the respective parties, was entirely cumulative of the testimony of the first witness, as hereinabove outlined.

Supplementing plaintiffs' evidence in the incorporated case, plaintiffs, in this case, introduced the testimony of four witnesses, one of whom appeared in the previous case. A summary of the testimony of each of those witnesses follows.

Joseph Eitinger, an importer of beads for "almost 40 years," also handled rhinestone rondelles, such as the merchandise in question, over the same period. He testified that rhinestone rondelles are two

metal stampings, pressed together, and set with glass, and that they are exclusively used as separators between beads in making necklaces (defendant's illustrative exhibit F, *supra*). The witness agreed with the definition of "bead," read to him by counsel from Funk & Wagnalls New Standard Dictionary, as follows: "Bead: 1. A little perforated sphere, ball, cylinder, or the like, usually strung on a thread or attached to a fabric for decoration," and added that he agreed with that definition because it points out that a bead "doesn't have to be perfectly round, as long as it has a hole and is used for stringing purposes or on a string, * * *." (R. 18.) He stated further that the rhinestone rondelles (collective exhibit 1, *supra*) come within the quoted definition of "bead," because the rhinestone rondelle has "a hole in the center, and it is used for stringing purposes." Confronted with the same definition of "rondelle" that was read to the witnesses in the incorporated case, this witness stated that the definition agreed with his understanding of the term and that the items in question come within the scope of that definition, because each has a hole in the center, is known to the manufacturers of jewelry as a rhinestone rondelle, and is used "only in the case of stringing, for necklaces, combined with beads of any type, lace, or other materials." (R. 14.) Shown the collection of items (defendant's illustrative exhibit G in protest 245333–K), the witness stated that only those capable of use for stringing purposes are rondelles; the remaining ones were characterized as "rhinestone findings," having only one side and made for the special purpose of soldering. The witness' testimony with respect to invoicing is consistent with that along the same line as in the incorporated record, to the effect that the merchandise in question is always invoiced as rhinestone rondelles and that the word "bead" is not used.

Samuel H. Berg, an importer of beaded goods for 40 years, stated that "on occasion" he has handled rhinestone rondelles (collective exhibit 1, *supra*), which he characterized as "alternating beads," used "to make necklaces or to make bracelets, or to make any type of beaded jewelry." In such use, rhinestone rondelles give pliability or improve necklaces and, on occasion, reduce costs. The witness gave his understanding of a "bead" as "anything with a hole running through and through," without regard to shape or materials of which composed. His testimony with reference to the definition of "rondelle" is consistent with that given along the same line by plaintiffs' previous witnesses. Referring to the collection of items (defendant's collective illustrative exhibit G, *supra*), the witness identified as rhinestone rondelles those capable of use for stringing; the others were "called ornaments, rhinestone ornaments and rhinestone motifs." On cross-examination, the witness testified that these rhinestone rondelles are exclusively used as separators between beads in the manner illustrated in the necklace (defendant's illustrative exhibit F,

*supra*), that they are never used alone, and that they are two metal stampings, pressed together and set with glass.

William Wachtenheim stated that he is an importer of imitation stones and beads and that he has handled rhinestone rondelles for approximately 6 years. He described a rhinestone rondelle as two pieces of metal pressed together and set with rhinestones. Based on his understanding that a bead is anything which has a hole through the center, he considers rhinestone rondelles to be beads that are normally used for in-between beads or alternating beads. Concerning their use, the witness stated that the predominant use for rhinestone rondelles is "in combination with other beads, to make a necklace, or whatever the piece of jewelry is to make it more attractive looking," that they are also used alone "with other items, like compacts or lipstick cases, or other novelties" and in drop earrings, where they are separated by the use of tiny seed beads.

John H. Field, who testified in the incorporated record, was recalled in this case. He merely confirmed his previous testimony.

All of defendant's evidence—oral testimony of five witnesses and several illustrative exhibits—was introduced in the incorporated record. Defendant offered no additional proof in the retrial of the issue in the present case. The following review of defendant's evidence is substantially the same as the outline set forth in our decision in the *Walco Bead Co., Inc., et al.* case, *supra*.

Defendant's first witness, Greenberg, was the executive vice president of the Brier Manufacturing Co., manufacturer of all types of jewelry and other related items of adornment, including "kiddie" jewelry, costume jewelry, men's jewelry, and religious jewelry. The company also imports all types of beads, imitation stones, and "various brass articles suitable for the manufacturing of jewelry." The witness stated that he is "in general charge of designing, production, importing of materials, as well as domestic purchasing and sales." His knowledge of rhinestone rondelles goes back, prior to 1930, when he purchased such merchandise in Czechoslovakia. Over the "last several years," he has been manufacturing rhinestone rondelles in the plant of his company in Providence, R. I. He identified several rhinestone rondelles of different sizes and shapes (defendant's illustrative exhibit G, *supra*), including items that are identical with the articles in question, which have been consistently known as rhinestone rondelles since 1926, when the witness first handled such merchandise. Based on personal observation of the manufacturing processes in Czechoslovakia and on actual experience manufacturing rhinestone rondelles in this country, the witness testified that the merchandise in question consists of two brass findings, or brass disks. He defined a "finding" as "a small article of metal, suitable for the further fabrication of jewelry. It is a partly fabricated piece of material." The two findings, or metal disks, used in making these rhinestone rondelles are made on a stamp-

ing press and were identified as the female member (defendant's illustrative exhibit A in protest 245333–K) and the male member (defendant's illustrative exhibit B in protest 245333–K). They are produced by combination tools in multiple operations. The stamping press strikes the contour, or the shape, of the design. A hole is punched, and the ends are trimmed to produce fluted edges that fit the contour of the glass rhinestones. All three operations are performed simultaneously. The disks, or stampings, are so constructed that the slight protrusion in the center of one fits into the hole punched in the other. After the required number of glass rhinestones have been laid in the basic male member (illustrative exhibit B, *supra*), the other (illustrative exhibit A, *supra*) is placed on top, and, by pressure, known as a swedging operation, the glass rhinestones are permanently set by rolling the projected part of the basic member around the hole in the other. The finished item, a rhinestone rondelle, is a combination of stampings set with glass. Rhinestone rondelles are used in an "infinite variety" of ways. "They are used in necklaces, bracelets, dress buttons, hat pins, shoe ornaments," and lipstick containers. The primary purpose of rhinestone rondelles is for ornamentation.

The witness' testimony on cross-examination emphasized his distinction between beads and rhinestone rondelles. In this connection, he stated he never heard of an article made of stampings, set with rhinestones, called a bead. Asked about the definition of "rondelle" that plaintiffs' counsel had read to the witnesses for plaintiffs, he stated that he agreed with the definition, but it did not relate to the rhinestone rondelles, collective exhibit 1, *supra*, involved herein, which "is a combination of stampings set with glass stones" (R. 101 in protest 245333–K). Questioned by the court with reference to the collection of rhinestone rondelles displayed on the velvet card (illustrative exhibit G, *supra*), the witness testified that "in our industry, in the jewelry industry, all those articles on that velvet card that you have are referred to as rondelles. Now, they may be referred to as a triangular rondelle, and perhaps the nomenclature is contrary to the dictionary definition, but in the jewelry industry everything you see on that card is commonly referred to as rhinestone rondelle, whether it is a beveled rondelle or a round rondelle or a triangular rondelle, they are bought and sold as those in the commercial world."

By Judge Mollison:

Q. Even though the object is square?—A. Even though the object is square. That is a terminology in our industry, and while it would appear as words, as you pick over a word that is in conflict with the very essence of the word, rondelle itself, yet through the years we in the jewelry industry referred to all of those particular sizes and shapes as rhinestone rondelles.

Q. How many years has that been true?—A. Well, I will go back to my own experience, to 1928. But prior to that time would be hearsay as to what I heard, but for the past 27 years I believe it is true, as far as I am concerned, and those of us in the industry are familiar with it, sir.

The concluding statement of the witness' testimony is that rhinestone rondelles are composed of two metal stampings set with glass.

Defendant's second witness was the secretary and treasurer of E. H. Ashley & Co., Inc., of Providence, R. I., importer of stones, beads, and other materials used in jewelry, including rhinestone rondelles. He became familiar with the merchandise in question (collective exhibit 1, *supra*), as well as the items displayed on the velvet card (illustrative exhibit G, *supra*), by having seen them on the European market, and "later on seen them as produced in this country," and ordered and sold them, throughout the United States. The witness testified that, from 1928 to the present time, the merchandise under consideration (collective exhibit 1, *supra*) has been bought and sold, and referred to in the trade, as rhinestone rondelles, which he described as follows: "Rhinestone rondelles are two metal parts— an assembly of two metal parts wedged together and holding glass stones." The two metal parts are stampings. Rhinestone rondelles are not beads; they have never been bought or sold, or referred to, as beads. The witness' reasons for saying that rhinestone rondelles are not beads were stated as follows (R. 116 in protest 245333–K):

At least, of course, there are borderline cases, but at least, the majority of these prerequisites should be fulfilled, such as a bead. The ideal bead would be a round object, round or oval object, and of a homogeneous material, primarily a semi-precious stone or a glass or a pearl, drilled somewhere along its longest axis, and capable of being strung in a series, to make a necklace by itself. The rhinestone rondelle is not a homogeneous material; it is not, certainly not perforated along its longest axis. It has, as a matter of fact, another factor, in that a bead in order to hang best and straight, should hug the thread on which it is strung as closely as possible. That means the hole should be as close to the thickness of the thread as possible. If it is wider it wobbles; it does not hang straight. The rhinestone rondelle certainly has a much larger hole than would be functional from that point of view.

Rhinestone rondelles are never used alone in making a necklace.

On cross-examination, plaintiffs' counsel repeated the same definition of "rondelle," hereinabove set forth, and which was read to the previous witnesses. This witness characterized the definition as "quite satisfactory for a rondelle," but "It does not cover a rhinestone rondelle" (R. 119 in protest 245333–K). There is no common use for rhinestone rondelles. They are used "all over the jewelry field," in innumerable forms of jewelry designs, principally in earrings, necklaces, bracelets, hat pins, brooches, buttons, and also in lipstick cases and bag frames.

Alex Danenberg, defendant's third witness, stated that he is a partner in the Novel Products Co., whose manufacturing operations, since 1929, included rhinestone rondelles. The witness testified that the merchandise in question (collective exhibit 1, *supra*) is rhinestone rondelles, bought and sold as such, and never referred to as beads. He stated that he agreed with the testimony of defendant's witness,

Greenberg, as it explains the manufacture of rhinestone rondelles. He then described a rhinestone rondelle as a series of rhinestones, made of glass, set between two flanged caps, that are stampings, and swedged, or held, together in the center. The hole in the rhinestone rondelle serves as a convenience in the manufacturing process, for the tools to get a recess, "so that you can swedge both parts together. It doesn't necessarily mean that you have to put the hole in the center, that can be put on the side." (R. 128 in protest 245333-K.) The witness' principal uses for rhinestone rondelles are in the making of necklace clasps, cuff links, bracelet parts, necklace parts, and trim for lipstick holders. Rhinestone rondelles are never used alone to make a necklace. The same definition that plaintiffs' counsel read to the other witnesses was repeated to this witness. Asked whether he agreed with that definition of "rondelle," the witness replied that "I don't tie it up with this rondelle," referring specifically to the rhinestone rondelles in question. (R. 133 in protest 245333–K.)

Irving Roth, general manager of Roth & Steiner, who is a domestic manufacturer of rhinestone novelties, custome jewelry, and accessories, including rhinestone rondelles, testified that he has manufactured rhinestone rondelles like those under consideration (collective exhibit 1, *supra*), that they have always been referred to as rhinestone rondelles, and that they have never been bought or sold as beads. Referring to the collection of rhinestone rondelles displayed on the velvet card (illustrative exhibit G, *supra*), the witness stated that those items are identified according to their shapes, such as, bevel rondelle, triangle rondelle, oval rondelle, square rondelle. He described the manufacture of rhinestone rondelles as follows:

> We are making, first, the stampings into the shape what we want to make the rhinestone rondelle in. Then we set rhinestones in it, and we have holes and male and female parts, which are swedged together, and we make the rhinestone rondelle.

The witness referred to more recent uses of rhinestone rondelles. In this connection, he mentioned their use in ladies' pipes (defendant's illustrative exhibit N), in cigarette holders for the purse (defendant's illustrative exhibit O), in ladies' cigarette holders (defendant's illustrative exhibit P), in pencils (defendant's illustrative exhibit R), in ladies' eyeglass holders (defendant's collective illustrative exhibit T), in tassels used by dress manufacturers as zippers (defendant's illustrative exhibit V), and in a metal container for a toothbrush (defendant's illustrative exhibit X). The witness also stated that he sold loose rhinestone rondelles. In such condition, they were sold to manufacturers of dresses, shoes, hosiery, millinery, pocketbooks, and many other articles.

On cross-examination, the witness testified that he manufactures one type of bead, called a link bead, that is sold to the "Rosary

trade." His comment with reference to the definition of "rondelle," which plaintiffs' counsel referred to all of the witnesses, as hereinabove set forth, was that he "might" associate the definition with a glass rondelle, but not with a rhinestone rondelle. He distinguished between the glass rondelle and the rhinestone rondelle by describing the glass rondelle as a flat item, made in one piece and of one substance, and stating that the rhinestone rondelle is composed of more than one material, made of two metal stampings, set with glass.

Defendant's fifth, and last, witness, Kalman Singer, stated that he is engaged in the manufacture of buttons and rhinestone rondelles. It was agreed between counsel that the witness' testimony would be substantially the same as that offered by defendant's witness, Greenberg, hereinbefore reviewed.

On the basis of the combined record, as hereinabove outlined, we find that there is a specific class of merchandise known as rhinestone rondelles which are not referred to as beads; that the merchandise in question (collective exhibit 1, *supra*) is rhinestone rondelles; that these items, since prior to the enactment of the Tariff Act of 1930, have consistently been bought and sold as rhinestone rondelles; that they are not referred to in the trade as beads; that the rhinestone rondelles in question consist of two metal stampings set with glass; and that they are suitable for, if not chiefly used in, the manufacture of articles within the classes of merchandise provided for in paragraph 1527 (a), (b), and (c), *supra*. The record also shows that these rhinestone rondelles, when used in the form of a necklace, are always used as separators between beads and never by themselves.

Plaintiffs' argument in this case, as set forth in counsel's brief, is largely, if not entirely, repetitious of the contentions advanced by plaintiffs in the *Walco Bead Co., Inc., et al.* case, *supra*. Here, as in that case, plaintiffs contend that a "rondelle" is a form of bead, and, therefore, the rhinestone rondelles in question are properly classifiable under the provision for "beads, not specially provided for," in paragraph 1503, as modified, *supra*. Counsel has cited several cases to support the contention, but all of them are distinguishable from the present issue, as the following brief review of each shows.

In *Leonard Levin Co.* v. *United States*, 27 C. C. P. A. (Customs) 101, C. A. D. 69, the merchandise consisted of glass beads which, in their imported condition, were strung in necklace lengths. The question presented therein was whether such glass beads were in imitation of precious or semiprecious stones, as classified, or were properly dutiable under the residuary provision for beads, not specially provided for, as claimed. The appellate court held that plaintiff had failed to make out a *prima facie* case and, therefore, sustained the collector's classification. The case offers nothing to influence determination of the issue now before us.

In *United States* v. *General Transport Co.*, 22 C. C. P. A. (Customs) 446, T. D. 47440, the merchandise consisted of small, perforated, animal-shaped articles, which were held to be classifiable as beads, rather than as jewelry. The conclusion was based on the record in that individual case, evidenced very definitely by the court stating that "it is not our purpose here to define the term 'beads,' but rather to point out that the court would not be warranted in refusing to accept the testimony," solely because of the shape of the involved articles. Neither the merchandise nor the issue involved therein was comparable to what is before us in this case.

The case of *United States* v. *American Bead Co.*, 3 Ct. Cust. Appls. 509, T. D. 33166, involved several items, including glass beads. So far as the glass beads were concerned, the only question involved was whether or not the articles were suitable for use in the manufacture of jewelry. After finding that the glass beads were unfit for such purpose, they were held to be classifiable under the *eo nomine* provision for beads. There is nothing in that case to support plaintiffs' position in this case.

Although the case of *United States* v. *Judae & Co.*, 13 Ct. Cust. Appls. 164, T. D. 41024, included merchandise that the court described as "crystal roundels or disk-shaped beads," the conclusion therein, holding the articles to be classifiable as beads, has no effect on the disposition of the present case. In that case, it was not disputed that the so-called "crystal roundels" were beads. The importer sought classification for the articles as imitation precious or semiprecious stones, a claim that was denied. The conclusion was based on the evidence adduced therein; it is not to be taken as authority for classification of any general class of merchandise.

Counsel for plaintiffs, in their brief, cite a line of cases wherein the question presented was whether certain processing prior to importation advanced raw material to a point that resulted in the production of a finished or partly finished article. *United States* v. *C. S. Emery & Co.*, 18 C. C. P. A. (Customs) 208, T. D. 44399; *Bamboo & Rattan Works, Inc.* v. *United States*, 39 C. C. P. A. (Customs) 163, C. A. D. 480; *C. J. Tower & Sons* v. *United States*, 40 C. C. P. A. (Customs) 30, C. A. D. 493. The *C. S. Emery & Co.* case involved doorsills and stair rails, which had been manufactured by sawing, planing, tongueing, and grooving to a condition where they had been finished for the purpose intended and had been removed from the category of mere material. The *Bamboo & Rattan Works, Inc.*, case, *supra*, related to bamboo that had been split and cut to various lengths and treated in such a manner as to make them susceptible of exclusive use as stakes to support growing plants. The appellate court held the merchandise to be properly classifiable as articles of bamboo, rather than split bamboo, the material. In the *C. J. Tower & Sons* case, *supra*, cer-

tain dressed spruce, which had been cut and shaped according to a blueprint specification, prior to importation, so that the merchandise had become dedicated to a definite and specific use as crate frames, was held to be classifiable as manufactures of wood, as assessed, rather than as lumber, as claimed. The issue involved in each of those three cases is not presented in this case; hence, those cases have no application herein.

The case of *Coro, Inc.* v. *United States*, 41 C. C. P. A. (Customs) 215, C. A. D. 554, offers no support for plaintiffs' position. There, the merchandise consisted of rough, dull, or unpolished heart-shaped pieces of silver, stamped from a larger piece of metal by power press with the use of dies that formed the imported hearts into different sizes. The issue presented was whether the merchandise was stampings, as assessed, or unfinished jewelry, as claimed. The Court of Customs and Patent Appeals held that plaintiff had failed to sustain its burden of proof and, accordingly, sustained the collector's classification of the merchandise. In this case, the rhinestone rondelles under consideration are stampings of metal, set with glass, suitable for use in the production of a wide variety of articles embraced within paragraph 1527 of the Tariff Act of 1930, and, like the merchandise involved in the *Coro, Inc.*, case, *supra*, are properly classifiable under the comprehensive provisions of paragraph 1527 (d) of the Tariff Act of 1930, as originally enacted and as amended, *supra*.

As hereinabove set forth, counsel for plaintiffs, throughout the trial of the present case, as well as the *Walco Bead Co., Inc.*, *et al.* case, *supra*, referred to the following definition of "rondelle," appearing in Webster's New International Dictionary, second edition, both the 1936 and 1950 printings, as follows:

A gem or bead cut in a thin disk pierced in the center, and, commonly, strung between larger stones or beads in a necklace.

The definition just quoted is not an acceptable description of the merchandise in question. The rhinestone rondelles under consideration are not gems or beads "cut in a thin disk." The testimony of defendant's witnesses is to the effect that the above-quoted definition cannot be associated with these rhinestone rondelles before us which are bought and sold and known throughout the trade as rhinestone rondelles. The evidence adduced in the combined records now before us is conclusive in establishing that these rhinestone rondelles are stampings of metal set with glass (rhinestones). They are not "beads," within the common meaning of the term "bead," which is defined in Funk & Wagnalls New Standard Dictionary (1941 edition), as follows:

bead, *n.* **1.** A little perforated sphere, ball, cylinder, or the like, usually strung on a thread or attached to a fabric for decoration.

The rhinestone rondelles in question are not identifiable within the foregoing definition of the word "bead." They differ from beads in general appearance as well as in the myriad of uses to which they are applied. Rhinestone rondelles are not capable of use by themselves in the form of a necklace. Their use in such a manner is always as separators between beads. Furthermore, there is no usual or chief use for rhinestone rondelles. The combined records before us are positive in establishing that these rhinestone rondelles are suitable for, and are actually used in, the manufacture of items of jewelry, as well as in a wide variety of articles, designed to be worn on apparel or carried on or about or attached to the person, such as those contemplated by paragraph 1527 (c), *supra*.

As early as 1905, in the case of *United States* v. *American Gem & Pearl Co.*, 142 Fed. 283, rock-crystal rondelles were excluded from classification as beads. Later, and in the case of *Portenoy Co.* v. *United States,* 59 Treas. Dec. 1519, Abstract 14934, this court, speaking through the late Judge Sullivan, held that rhinestone rondelles are not beads. That decision, as reported in abstract form, and so far as pertinent, reads as follows:

> The samples are small disks of metal with a hole in the center. One is composed of white metal, set around the rim with small rhinestones, and the other is composed entirely of white metal. The testimony showed that they are placed between various beads and strung on threads into necklaces. It was found that these rondelles do not answer the dictionary definition of beads.

The distinction between rondelles and beads was expressed in *United States* v. *Wanamaker*, 14 Ct. Cust. Appls. 285, T. D. 41888, where, in rejecting a claim that certain strung beads were parts of necklaces, our appellate court stated:

> * * * The strings of beads are sometimes cut up and smaller necklaces, bracelets and earrings are made therefrom, always with a different cord of pure silk, *sometimes with rondelles* between the beads and sometimes with the graduated arrangement changed. [Italics supplied.]

Plaintiffs also contend in this case, as they did in the incorporated case, that the provision for "Beads, * * *, not specially provided for," in paragraph 1503, as modified, *supra*, is more specific than the provision in paragraph 1527 (d), as modified, *supra*, for "Stampings * * * of metal, * * * set with glass * * * suitable for use in the manufacture of any articles provided for in paragraph 1527 (a), (b), or (c), Tariff Act of 1930 * * *." Our disposition of that contention was stated in our decision in the *Walco Bead Co., Inc., et al.* case, *supra*, as follows:

> The contention, as stated in plaintiffs' brief, that "the *eo nomine* designation for beads in Par. 1503 as modified by T. D. 51898 is without words of limitation" is wholly untenable in the light of the phrase "not specially provided for," included

therein.  The presence of that statutory phrase is a positive limitation to the scope of the said modified paragraph, so that the provisions thereof apply only to such beads as are not specifically provided for elsewhere.  The preponderance in weight of the evidence herein establishes that rhinestone rondelles are stampings of metal, set with glass, suitable for use in the manufacture of articles provided for in paragraph 1527 (a), (b), or (c) of the Tariff Act of 1930, and, as such, they come squarely within the provision for such merchandise in paragraph 1527 (d), as modified, *supra*.  Hence, even if rhinestone rondelles were beads—which we hold they are not—they would not be classifiable under said modified paragraph 1503, because they are provided for in paragraph 1527 (d), as modified, *supra*.

The reasoning and conclusion set forth in the foregoing quotation from the incorporated case have equal application, with the same force and effect, in this case.

The cases of *United States* v. *Bartiromo*, 9 Ct. Cust. Appls. 183, T. D. 38003, and *United States* v. *Lamport Export Co.*, 15 Ct. Cust. Appls. 394, T. D. 42569, that are mentioned in plaintiffs' brief, tend to support the collector's classification of these rhinestone rondelles under paragraph 1527 (d), as modified, *supra*.  Both of those cases held to the effect that the provision for materials, suitable for the manufacture of jewelry, was more specific than the provision for beads of all kinds.  The *Bartiromo* case arose under the Tariff Act of 1913 and the *Lamport Export Co.* case arose under the Tariff Act of 1922.  In both cases, the merchandise under consideration consisted of beads, and in each of them a provision covering articles "suitable for use in the manufacture of jewelry" was held to be more specific.  While the statutory language of the competing provisions in the two cases was not identical with that involved herein, the issue therein is sufficiently analogous to that now before us to make the cases important considerations in our disposition of the present case.

Plaintiffs' reference to the matter of invoicing, which does not include the word "bead" in itemizing rhinestone rondelles, has no influence herein.  In this connection, plaintiffs attempt to associate rondelles with bugles, the latter being concededly glass beads, but which are not identified on invoices as beads.  The practice, as it is followed with bugles, supplies no reason for classifying rhinestone rondelles as beads.  "Bugles" are *eo nomine* provided for in paragraph 1503, as amended, *supra*.  Rhinestone rondelles are not.  They are provided for in paragraph 1527 (d), as modified, *supra*, as "Stampings * * * of metal, * * * set with glass * * * suitable for use in the manufacture of any articles provided for in paragraph 1527 (a), (b), or (c), Tariff Act of 1930 * * *."

It is a well-established principle in customs litigation that a plaintiff, protesting the collector's classification, assumes the twofold burden of showing that the classification adopted by the collector was erroneous and that the claimed classification is correct.  *United States* v.

*Gardel Industries*, 33 C. C. P. A. (Customs) 118, C. A. D. 325; *Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 C. C. P. A. (Customs) 150, C. A. D. 227. On the basis of the combined records before us, plaintiffs herein have failed to sustain their burden.

Careful consideration has been given to all of the cases cited in the several briefs filed by counsel for the respective parties and *amicus curiae*, but our specific references herein have been only to such cases deemed helpful toward our disposition of the issue.

For the reasons hereinabove set forth, we adhere to our decision in the *Walco Bead Co., Inc., et al.* case, *supra*, and hold the rhinestone rondelles in question to be properly classifiable under paragraph 1527 (d), as modified, *supra*, as assessed by the collector. The protests are overruled, and judgment will be rendered accordingly.