**KURTZ IMPORTING CO.**
v.
**UNITED STATES.**
**C.D. 3193; Protest Nos. 65/7904–11313–63.**

United States Customs Court,
First Division.
Nov. 13, 1967.

Siegel, Mandell & Davidson, New York City (Allan H. Kamnitz and David Serko New York City, of counsel) for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (James S. O'Kelly, New York City, and Arthur E. Schwimmer, trial attys.), for defendant.

Before WATSON and BECKWORTH, Judges, and OLIVER, Senior Judge.

OLIVER, Senior Judge:

Merchandise invoiced as "Alabaster Glass Beads" was assessed with duty at the rate of 55 per centum ad valorem under paragraph 1527(a) (2) of the Tariff Act of 1930, as modified by T.D. 51802, as unfinished jewelry. Plaintiff claims the merchandise is properly dutiable at only 15 per centum ad valorem under paragraph 1503 of said act, as modified by T.D. 54108, as beads, not specially provided for. An alternative claim under the provisions of paragraph 1528 of the act was specifically abandoned at trial and an additional protest claim under paragraph 1503, as modified, supra, not further pressed by plaintiff, will be deemed abandoned. It was stipulated by the parties that the imported beads are in imitation of alabaster; that alabaster is not a precious or semiprecious stone; and that said beads are not wholly or in chief value of synthetic resin.

The statutory provisions involved herein provide as follows:

Paragraph 1527(a) (2), as modified by the General Agreement on Tariffs and Trade, T.D. 51802 and T.D. 51939:

Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof):

\* \* \* \* \* \*

All other, of whatever material composed, valued above 20 cents per dozen pieces . . . 55% ad val., but not less than 50% of the amount payable on the basis of the duty "existing" (within the meaning of Section 350, Tariff Act of 1930 as amended by the Act of July 5, 1945) on January 1, 1945 if the article were not dutiable under paragraph 1527, Tariff Act of 1930.

Paragraph 1503, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108:

Spangles and beads, including bugles, not specially provided for .... 15¢ ad val.

The Tariff Act of 1930 states:

*Provided,* That the rates on spangles and beads provided in this paragraph shall be applicable whether such spangles and beads are strung or loose, mounted or unmounted: \* \* \*.

Several exhibits were offered into evidence by the plaintiff as well as the testimony of Mr. Murray Kurtz of the Kurtz Importing Company, Mr. George E. Ame of the Hudson Pearl Company, and Mr. Henry R. Krack of Marvella, Inc.[1] Much of this evidence can be expressed in the following summation: The merchandise is ordered according to specification by Marvella through Kurtz for delivery to Hudson. The beads are manufactured in Japan from imitation alabaster glass rods and placed on silk strings in graduated order with the largest bead in the center and the rest tapering off evenly towards both ends. The instant importation consists of two

1. Hereinafter referred to as Kurtz, Hudson, and Marvella, respectively.

sizes of beaded strands: 17-inch strands of 3 by 8 mm. beads on 29-inch silk strings (plaintiff's exhibit 1) and 20-inch strands of 6 by 9 mm. beads on 32-inch silk strings, each size grouped in bunches of a dozen strands. In their imported condition, the strands of beads are unsalable to the consumer market. At Hudson, the beads are removed from their silk strings and slipped onto a wire which is set on a frame. They are then spaced, cemented in place, and dipped into various solutions of nitrocellulose to receive their pearlized effect. When almost dry, they are stripped back again onto a new string of silk, cotton, or nylon thread and, in this condition (plaintiff's exhibit 4), they are shipped to Marvella. With the exception, sometimes, of the removal of a pearl or two from the ends, it was estimated that less than 50 percent of the pearlized beads are utilized by Marvella in the form received from Hudson as single strand graduated necklaces after tipping and clasping the ends. The remaining strands, with or without the removal of an end bead or beads, are variously processed into two- to six-strand necklaces, necklaces with "French Knots" tied between each bead, and necklaces ornamented with rondels, rhinestone bars, and the like (plaintiff's exhibit 6 illustrates this last type). The removed end beads are utilized in the production of other articles of jewelry such as pins and earrings as illustrated by plaintiff's exhibit 5, or in the clasp of a bracelet as illustrated by plaintiff's exhibit 7.[2] Several of the uses named, particularly the "French Knot" ornamentation, require a further restringing onto longer or heavier string. In its various processing steps, Marvella never changes the graduated order of the beads as imported.

Kurtz sells all of its importations of merchandise like exhibit 1 to Marvella, and Hudson pearlizes only for Marvella. The witness Ame of Hudson testified that he developed the pearlizing process used by Hudson that he was familiar with and also helped develop Marvella's processing.

The issue presented for our determination is whether or not the imported strands of beads are properly described as unfinished jewelry within paragraph 1527(a) (2). Plaintiff argues that, until the beads have been pearlized and restrung, they cannot be deemed unfinished jewelry and, in their imported condition, they are "nothing more than mere material for use in making various articles of jewelry." The case of United States v. Wanamaker, 14 Ct.Cust.Appls., 285, T.D. 41888, is cited as governing the decision in this case.

The *Wanamaker* case involved an importation of rock crystal beads, graduated, faceted, cut and strung, which had been classified as unfinished jewelry under paragraph 1428 of the Tariff Act of 1922. Said paragraph is similar in all material respects to the language in paragraph 1527(a) (2) involved here. The evidence indicated the following: The beads were restrung after importation, the imported cord being not good enough or strong enough for ultimate use; they were frequently cut up and made into smaller things such as throat necklaces, bracelets, and earrings; the graduated arrangement was sometimes changed. The court held that the beads were not unfinished jewelry since they were neither dedicated to making a particular item of jewelry nor were they that particular jewelry item in an unfinished state. In summing up the evidence, it observed that,

 * * * It was not a necklace in its imported condition and to finish it into a necklace would require more than adding to what has already been done. To finish it into a necklace all of the beads, in the order in which they are now strung, might be used, but the present temporary cord would have to be replaced with a different one.

2. Plaintiff's exhibit 8, illustrative of an ornamented graduated bracelet strip, was received in evidence as another use of alabaster beads. They are, however, not the size or strand length of the beads in issue here.

It is the defendant's contention that the imported beads have been sufficiently committed to the manufacture of necklaces so as to bring the determination in this case under the scope of the appellate court's decision in United States v. Frankel & Sons, 52 CCPA 81, C.A.D. 862. The merchandise in that case consisted of 15-, 16-, 17-, and 21-inch strands of graduated alabaster beads imported on cord strings. There was an excess of about 60 inches of cord in each string of beads, and they were unsalable to the retail trade in their imported condition. They were subsequently pearlized by a process in which the beads are moved to either end of the cords, dipped into pearlizing solutions, and then stripped back to the clean center portions of the cord. They were then tipped and clasped and sold either as single strand necklaces or, by the removal of an end bead or two, made into multiple-strand necklaces.

The following excerpt from the decision of the predecessor court in United States v. Cartier (Inc.), 15 Ct.Cust.Appls. 334, 336, T.D. 42493, was cited and relied upon:

> The court is of the opinion, however, that the provision for "jewelry * * * unfinished" was designed by Congress * * * to provide that an article so far processed that it was definitely committed to the manufacture of a particular kind of jewelry, but not completed, should be subjected to the rate for unfinished jewelry.

> Certainly a part of jewelry, such as that involved in this case, which has been so far advanced as to unmistakably indicate the particular article of jewelry which it will become when completed and which is commercially unfitted in its condition as imported for the making of anything else, is unfinished jewelry.

In reversing the decision of this court and holding that the merchandise was more properly classifiable as unfinished jewelry under paragraph 1527(a) (2) than as beads, NSPF, in paragraph 1503, the court of appeals in the *Frankel* case,

supra, considered the following factors controlling: (1) no evidence that the imported strands of beads ever become anything else but imitation pearl necklaces; (2) the strings upon which the beads were imported are the strings of the final necklaces; (3) the graduated arrangement of the beads is not changed; and (4) the lengths of the strings of beads are substantially (within a bead or two), if not exactly, the lengths of the final articles. The post-importation processes of pearlizing and tipping and clasping were held not to alter their status as unfinished jewelry. Nor did the fact that they were made into single-, double-, or triple-strand articles affect their classification since in every case they became necklaces.

In the instant situation, the imported beads are restrung as were those in the *Wanamaker* case, supra, while their graduated order is never altered as was true of the beads in the *Frankel* case, supra. Plaintiff seeks to distinguish *Frankel* not only on the fact of restringing but also because, it argues, the evidence establishes that the merchandise is used to make articles of jewelry other than necklaces.

We cannot agree that the evidence supports a finding that the imported strands of beads are used in making various articles of jewelry other than necklaces. Plaintiff's witness Krack of Marvella did testify that they need not be processed into a necklace just in the form of exhibit 4, stating further that perhaps 85 percent of the 3 by 8 mm. graduated beads in the form of exhibit 4 were so finished without additional restringing. The clear implication of this testimony, which is corroborated not only by other statements respecting end use but also by the exhibit evidence itself, is to the effect that the graduated beads (excepting the removed end beads), pearlized and restrung as in exhibit 4, are processed either into single-strand necklaces by tipping and clasping or into various other forms of ornamented and/or multiple-strand necklaces as illustrated by exhibit 6. With the exception of the removal and

use of one or two end beads, the imported 17- and 20-inch strands have been shown to be used only in the processing of simple or complex necklaces, the witness Krack admitting that a different bead size and strand length are used for graduated bracelets such as plaintiff's exhibit 8. Furthermore, both Ame and Krack explicitly testified that the reason for ordering the instant merchandise in its specific lengths and graduated order was for the sole purpose of processing it into imitation pearl necklaces, Krack stating additionally that this purpose was in keeping with what he knew to be general trade practice. As the witness Ame put it, ordering them in graduated form saves significant labor costs in the production of necklaces.

■ It has been recognized by our appellate court in the *Frankel* case, supra, as well as by its predecessor court in Hecht Pearl Co. (Inc.) v. United States, 18 CCPA 171, T.D. 44375, that, where the determination of the importer to further rework or ornament an article of jewelry is one of choice and not necessity, such further manipulation will not affect its classification.

We are satisfied from the whole record in the case that the merchandise which is restrung or reworked is so treated by the importer, not because it must be in order to put it in condition for sale as an article (except, of course, any item that might be damaged) but as a matter of choice, and an election on the part of the importer to do something additional to an importation, after receiving it, does not affect its classifiable status. This status must be determined upon the basis of its condition as and when imported. [Hecht Pearl Co. (Inc.) v. United States, supra.]

Therefore, on the basis of this record, we do not find that the imported merchandise is used in making items of jewelry other than necklaces and the further ornamentation of those necklaces we hold to be immaterial to the issue before us.

■ We turn now to the question of whether the fact that these beads after importation and after pearlizing are restrung on a new and different thread of silk, cotton, or nylon prohibits their classification as unfinished jewelry. Plaintiff points to the above-quoted language of the court in the *Wanamaker* case, supra, which emphasized the fact that a temporary cord had to be replaced after importation by a different one. However, we are inclined to the Government's view that, although no actual restringing was present in the *Frankel* case, supra, the facts in this case bring it within the rationale of that decision. Rather than apply a definitive test to determine if merchandise is unfinished jewelry or not, the court of appeals in *Frankel,* in dealing with the question of post-import pearlizing, adopted the following approach on this issue:

* * * Where the ultimate destiny as necklaces is clear, we do not see that it is of much importance just which part of the manufacturing process remains to be done so as to make the jewelry "unfinished."

The 17- and 20-inch strands of imitation alabaster beads under protest here are specially ordered by length and in graduated sizes for the sole purpose of completing them into imitation pearl necklaces and that is the only article of jewelry, in simple or complex form, into which they are manufactured. The fact that there is evidence that the removed end beads are utilized on other jewelry pieces does not offer ground upon which to distinguish the principle of the *Frankel* decision. Although the imports are subsequently restrung, as well as pearlized, they appear to be commercially committed to the making of necklaces and their ultimate destiny as necklaces is clear.

Before concluding, it might also be observed that, on recross-examination, the plaintiff's witness Ame of the Hudson firm indicated that the silk string upon which the beads were imported was of sufficient strength to be used in making finished necklaces. Lacking a further

explanation of why it was not so used, the evidence does not appear to support a finding that the restringing upon different string was of necessity and not merely a matter of choice. If done from choice, then according to the principle in the *Hecht Pearl* case, supra, the restringing, as well as the reworking, would not affect the dutiable status of this merchandise. Certainly we do not accept the argument implied in plaintiff's brief that the stripping of the beads onto the wire frame for pearlization is itself a restringing. If the imported string was reusable, then the only actual restringing in this case was optional.

Therefore, on the basis of the evidence produced and following the conclusions reached therefrom, we hold that the imported strings of graduated imitation alabaster beads in 17- and 20-inch lengths were correctly classified by the collector under paragraph 1527(a) (2) as unfinished jewelry. The protest in this case is overruled, and judgment will issue accordingly.

WATSON and BECKWORTH, JJ, concur.